Mr. Paul Rowell, General Counsel Department of Management Services 4050 Esplanade Way Tallahassee, Florida 32399-0950
Ms. Dana Baird, Chief Legal Counsel Florida Commission on Human Relations 325 John Knox Road Building F, Suite 240 Tallahassee, Florida 32303-4149
Dear Mr. Rowell and Ms. Baird:
You ask substantially the following question:
Does the inspector general for the Department of Management Services have the authority to audit case files of the Florida Commission on Human Relations and, if not, who does have such authority?
In sum:
Absent the clear legislative designation of an entity or individual to audit case files of the Florida Commission on Human Relations, it would appear appropriate for the Auditor General to perform such audits when the commission has not otherwise requested the service from the Department of Management Services or made alternative auditing arrangements.
You state that the inspector general for the Department of Management Services (DMS) initiated an audit of the Commission on Human Relations (commission) in November 1998. The auditors sought access to the commission's case files, agreeing that any confidential information could be masked before the audit was performed. Access to all files, open and closed, was denied by the commission based upon statutory provisions making such files confidential. The commission maintained that masking confidential information within the files would be impractical and burdensome.
The Florida Commission on Human Relations is assigned to DMS, yet in the performance of its duties under the Florida Civil Rights Act of 1992 the commission "shall not be subject to control, supervision, or direction by the Department of Management Services."[1] Another commission and several divisions are likewise assigned to or created in DMS, with similar language removing them from the control, with supervision and direction of DMS.[2] Materials provided to this office indicate that audit services are provided by DMS to the other commission and divisions if requested by the respective executive director.[3] This is based upon language in the entities' enabling legislation directing DMS to provide administrative support and services "to the extent requested by the executive director."[4]
While no similar language relating to requests for support services is present in the enabling legislation for the commission, you indicate that the commission executive director requested audit services in 1992 and that the request has not been rescinded at this time.
Section 20.055(2), Florida Statutes, establishes an inspector general in each state agency in order to "provide a central point for coordination of and responsibility for activities that promote accountability, integrity, and efficiency in government." One of the prescribed duties of an agency inspector general is to "[p]rovide direction for, supervise, and coordinate audits, investigations, and management reviews relating to the programs and operations of the state agency. . . ."[5] Each inspector general is required to "conduct financial, compliance, electronic data processing, and performance audits of the agency and prepare audit reports of his or her findings."[6]
Confidentiality concerns regarding information to which an inspector general may have access during an audit are addressed in section 20.055(5)(b), Florida Statutes, which states that "[a]udit work-papers and reports shall be public records to the extent thatthey do not include information which has been made confidentialand exempt from the provisions of s. 119.07(1) pursuant to law."
(e.s.). Thus, while the inspector general is bound by the confidentiality provisions attendant to records of the commission,[7] he or she and the staff are given access to "any records, data, and other information of the state agency he or she deems necessary to carry out his or her duties."[8]
In response to the commission's position that it would be impractical and burdensome to mask confidential information in its files, I must point out that DMS or anyone else may make a public records request pursuant to Chapter 119, Florida Statutes, and obtain records that are not exempt or confidential from the Commission on Human Relations. The fact that the commission believes it would be impractical or burdensome to redact confidential information from its records does not excuse noncompliance with the mandates of the Public Records Law.[9]
This office has been advised that the Florida Commission on Human Relations does not have an inspector general within its organizational structure. Given the express exclusion of DMS from oversight or control of the commission and the absence of legislative direction as to the appointment of an inspector general for the commission, this office cannot read into the commission's enabling legislation a requirement that the department's inspector general be authorized to assume the role absent the commission's request.
As noted above, the Legislature has made it clear that the function of an inspector general is primarily to promote accountability, integrity and efficiency in government. Just as clear is the requirement that an inspector general be created in each state agency. Nothing has been cited that removes the Commission on Human Relations from these requirements or otherwise exempts the commission from financial and performance audits.
While no inspector general has been assigned to the commission in its enabling legislation, the Auditor General is authorized to "at any time make financial audits and performance audits of the accounts and records of all governmental entities created pursuant to law."[10] A "governmental entity" is defined as "a state agency, a county agency, or any other entity, however styled, thatindependently exercises any type of state or local governmentalfunction."[11] (e.s.) The Commission on Human Relations would clearly fall within this definition in carrying out its function under Part I, Chapter 760, Florida Statutes, the Florida Civil Rights Act.
Accordingly, absent the clear legislative appointment of an inspector general to the Florida Commission on Human Relations, it would appear appropriate for the Auditor General to perform financial and performance audits when the commission has not otherwise requested these services from the Department of Management Services or made alternative auditing arrangements.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 760.04, Fla. Stat.
[2] See, s. 957.03, Fla. Stat. (Correctional Privatization Commission); s. 120.65, Fla. Stat. (Division of Administrative Hearings); s. 121. 1905, Fla. Stat. (Division of Retirement); and s. 110.123, Fla. Stat. (Division of State Group Insurance).
[3] Materials provided to this office indicate that the executive director for the Correctional Privatization Commission has requested full scope audit and investigative services from the Department of Management Services.
[4] See, s. 957.03(6), Fla. Stat. (Correctional Privatization Commission); s. 120.65(1), Fla. Stat. (Division of Administrative Hearings); s. 121. 1905(1), Fla. Stat. (Division of Retirement); and s. 110.123(3)(a), Fla. Stat. (Division of State Group Insurance).
[5] Section 20.055(2)(d), Fla. Stat.
[6] Section 20.055(5), Fla. Stat.
[7] Section 760.11(12), Fla. Stat., provides:
"All complaints filed with the commission and all records and documents in the custody of the commission, which relate to and identify a particular person, including, but not limited to, a complainant, employer, employment agency, labor organization, or joint labor-management committee shall be confidential and shall not be disclosed by the commission, except to the parties or in the course of a hearing or proceeding under this section."
See also, s. 119.07(3)(q), Fla. Stat., removing the Commission on Human Relations from the provisions making complaints and other records regarding complaints of discrimination relating to race, color, religion, sex, national origin, age, handicap, or marital status in connection with hiring practices, position classifications, salary, benefits, discipline, discharge, employee performance, evaluation, or other related activities exempt from disclosure until a finding is made relating to probable cause, the investigation of the complaint becomes inactive, or the complaint or other record is made part of the official record of any hearing or court proceeding.
[8] Section 20.055(5)(c), Fla. Stat.
[9] See, City of Riviera Beach v. Barfield, 642 So.2d 1135,1137 (Fla. 4th DCA 1994), review denied, 651 So.2d 1192 (Fla. 1995) (city authorized to withhold exempt active criminal investigative records but "must comply with the disclosure requirements of sections 119.07[2] and 119.011[3][c] by making partial disclosure of certain non-exempt information contained in the records including, inter alia, the date, time and location of the incident"). Section 119.07(2)(a), Fla. Stat., provides that a custodian asserting an exemption "shall delete or excise from the record only that portion of the record with respect to which an exemption has been asserted and validly applies, and such person shall produce the remainder of such record for inspection and examination."
[10] Section 11.45(3)(a)3., Fla. Stat., as amended by Ch. 99-333, Laws of Fla. (1999).
[11] Section 11.45(1)(c), Fla. Stat.